# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| AFFINITY MUTUAL INSURANCE as Subrogee of HOLMES & COMPANY, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO.: 1:16-CV-155-TLS ) |
| NIDEC AVTRON AUTOMATION CORPORATION, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Affinity Mutual Insurance a/s/o Holmes & Company, Inc., filed a four-count subrogation action against Defendant Nidec Avtron Automation Corporation.[1] The theories of recovery included negligence, strict products liability, breach of contract, and breach of implied warranties. The Defendant has moved for summary judgment [ECF No. 42] on all four claims. In response, the Plaintiff asserts that it has a viable cause of action for breach of contract and breach of warranty based on lost income and other damages associated with replacing the Defendant's failed component parts. However, the Plaintiff is no longer pursuing the negligence and product liability claims.

The Defendant has presented evidence that the parties' contract contained language that would defeat the Plaintiff's remaining claims, but the Plaintiff maintains that a jury must determine whether this language was part of the contract between Holmes and the Defendant. For the reasons stated in this Opinion and Order, the Court finds that this case cannot be resolved as a matter of law on the record that has been presented.

---

[1] The Defendant's submission indicate that it has since merged into Nidec Motor Corporation.

**STATEMENT OF FACTS**

Holmes & Company operates a lumber mill in Columbia City, Indiana. In April 2012, Holmes purchased an Active Front End motor drive system from the Defendant for use in conjunction with Holmes's saw carriage. Such drive systems control the speed and torque of a motor in an industrial setting.

The Defendant provided Holmes with a thirteen-page quote dated April 5, 2012, and designated as "Quotation R12-00803." It was signed by a regional sales manager for the Defendant. Among the Terms and Conditions set forth in Quotation R12-00803 was a term regarding warranties and disclaimers:

> Company warrants that its products will be free from defects in material or workmanship for a period of one (1) year following installation, or fifteen (15) months after shipment from Company, whichever is shorter. <u>NO OTHER WARRANTY, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE IS MADE FOR THESE PRODUCTS, AND ALL OTHER WARRANTIES ARE HEREBY EXPRESSLY EXCLUDED.</u> In the event of a defect, the Company's obligation shall be limited to the supply of replacement parts free of charge. . . . <u>COMPANY SHALL HAVE NO OTHER LIABILITY, DIRECT OR INDIRECT, OF ANY KIND, INCLUDING LIABILITY FOR SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES.</u>

(Quotation, ECF No. 43-3 at 10.)

On April 6, 2012, Holmes faxed a purchase order to the Defendant's regional sales manager regarding "Quote # R12-00803." (Purchase Order, ECF No. 43-3 at 2.) The description of the item ordered is a "200 HP Standard Avtron Saw Carriage Electric Drive System per Quote." (*Id.*) On the line reserved for indicating who approved the purchase order is the name Daniel Almendinger— he is the owner of the saw mill. In his Affidavit, Almendinger acknowledges that the parties agreed on price and general terms, that his company sent the

2

purchase order, that the Defendant then installed the drive system, and that he received the written quote designated as R12-00803 (hereinafter "Quote R12-00803" or "the Quote"). However, he does not identify when he received the Quote (Almendinger Aff. ¶ 6, ECF No. 47-1 (stating that "[a]t some point, Holmes & Company, Inc. received the written quote" that the Defendant attached to its Summary Judgment Motion)), and maintains that there was never "any discussion between Defendant and anyone at Holmes about any of the terms contained in that Quote" (*id.* ¶ 7).

In 2014, a filter within the Defendant's product failed to perform correctly and was damaged. Holmes submitted a claim to the Plaintiff insurance company for the profits it lost from April 14–28, 2014, while the necessary component part of the drive system was being commissioned. Holmes also incurred costs for building supplies required to build an addition to the electrical room so that it would house a larger filter. These costs are the subject of the Plaintiff's claims in this litigation.

## ANALYSIS

### A.   Summary Judgment Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court should only deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (first citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); then citing *Swearnigen–El v. Cook Cnty. Sheriff's*

*Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. [A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

**B.      Negligence and Strict Product Liability Claims**

Generally, a court sitting in diversity will look to the "whole law of the forum in which it sits, including that state's choice-of-law rules." *Soo Line R.R. Co. v. Overton*, 992 F.2d 640, 643 (7th Cir. 1993) (first citing *Coldwell Banker & Co. v. Karlock*, 686 F.2d 596, 600 (7th Cir. 1982), then citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). "When a federal court hears a case in diversity, it does not necessarily apply the substantive law of the forum state; rather, it applies the choice-of-law rules of the forum state to determine which state's substantive law applies." *Auto–Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009).

Indiana's choice-of-law rules dictate that Indiana substantive law governs the torts

4

alleged in the Plaintiff's Complaint. *See Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004). Without determining whether there is a significant difference between the laws of the states where the Defendant is incorporated (Delaware) and has its principal place of business (Missouri), where the Plaintiff is incorporated and has its principal place of business (Ohio), and where Holmes is located (Indiana), the Court relies on the place of the wrong and the place of the injury, both of which support the application of Indiana law. *Id.*; *see also Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071 (Ind. 1987). The Plaintiff does not dispute this. Nor does the Plaintiff dispute the applicability of Indiana Products Liability Act, Ind. Code § 34-20-1-1, as well as Indiana's economic loss doctrine. *See Insterstate Cold Storage, Inc. v. Gen. Motors Corp.*, 720 N.E.2d 727, 731 (Ind. Ct. App. 1999). Accordingly, under Indiana law, the pure economic losses the Plaintiff is seeking are not recoverable in a products liability or negligence action. *Id.*; *I/N Tek v. Hitachi, Ltd.*, 734 N.E.2d 584, 588 (Ind. Ct. App. 2000). Rather, damage to the product itself and purely economic loss arising from the failure of the product to perform as expected, are governed by contract law. *Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 731 (Ind. 2010) (citing *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153 (Ind. 2005)).

The Plaintiff's Response to Defendant's Motion for Summary Judgment [ECF No. 47] makes no mention of the Defendant's arguments about the economic loss rule. Rather, the Plaintiff's brief focuses solely on the breach of contract and breach of implied warranty claims—an apparent acknowledgment that contract law is its only remedy. Although the Plaintiff did not address the Defendant's argument that the economic loss rule bars recovery in tort, neither did the Plaintiff expressly state that it was abandoning the negligence and product liability claims.

For sake of clarity, the Court deems that the Plaintiff has waived and abandoned those claims. *See Palmer v. Marion Cty.*, 327 F.3d 588, 597–98 (7th Cir. 2003) (deeming the plaintiffs negligence claim abandoned because he failed to delineate it in his brief to the district court in opposition to summary judgment); *Laborers' Int'l Union v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 2003) (stating that arguments not presented to the district court in response to a summary judgment motion are waived).

C.   **Breach of Contract and Warranties**

"Indiana choice of law doctrine favors contractual stipulations as to governing law." *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002) (citing *Hoehn v. Hoehn*, 716 N.E.2d 479, 484 (Ind. Ct. App. 1999)). The Defendant notes that the contract includes a choice of law provision indicating that Ohio law would govern the rights and obligations of the parties and the construction and effect of any contract formed. (Quotation, ECF No. 43-3 at 11.) Although this language is located in Quotation R12-00803 created by the Defendant on April 5, 2012, the Plaintiff disputes whether any of the terms in Quotation R12-00803 were part of its contract with the Defendant. In so arguing, the Plaintiff cites exclusively to Indiana contract law in its Response to Defendant's Motion for Summary Judgment. The Defendant, in reply, also turns to Indiana law to refute the Plaintiff's claims that a question of fact exists as to whether the terms found in Quotation R12-00803 were part of the contract between the parties that led to the installation of the drive system. The Court need not resolve which state's laws would govern the contract, as there is a genuine dispute that precedes that inquiry.

There is no dispute that, on April 6, 2012, Holmes entered into a contract for the

purchase of a 200 horsepower Avtron Saw Carriage Electric Drive System from the Defendant. The Plaintiff claims that a genuine issue of fact remains with respect to whether there was a meeting of the minds regarding the term in Quote R12-00803 that disclaims any express or implied warranties. The Plaintiff notes that Quote R12-00803 is not signed by anyone from Holmes, and there is no evidence regarding when it was sent to or received by Holmes. The Defendant's rebuttal is that Holmes's own purchase order of April 6 references Quote R12-00803. Obviously, Holmes's purchase order could not reference the Defendant's quote by its specific number and request purchase "per Quote" if a quote had not already been delivered to and received by Holmes. This is a valid point and one that the Plaintiff does not address head on. However, the Defendant also fails to create an unambiguous record. Holmes's reference to Quote R12-00803 in its purchase order does not establish that Holmes received all the written terms of that Quote, including the term regarding warranties, before it entered into the contract with the Defendant. The evidence, as presented to the Court at this stage, is subject to more than one reasonable interpretation.

    The Defendant designates Exhibit C as its contract with Holmes. Exhibit C is sixteen pages long and is comprised of several documents. The first page is a Contract/P.O. Comment Sheet dated April 6, 2012. The second page is the faxed purchase order from Holmes to the Defendant dated April 6, 2012. The third page is a Sales Summary Sheet that references Quote R12-00803. It cites to a quote date of August 5, 2012, even though the document was purportedly created by the Defendant's regional sales manager on April 6, 2012.[2] The next page

---

[2] All reasonable inference suggest that the August 5 date was a typographical error, and that the parties entered into a contract on April 6, 2012, based on a quote created on April 5. The product was installed in June 2012.

of Exhibit C is "PAGE: 1 of 4" of Quotation R12-00803 dated April 5, 2012, and sets out the standard basic features of the 200 HP Standard Avtron Saw Carriage Electric Drive System. (Quotation, ECF No. 43-3 at 4.) It also contains the mailing address and fax number for Holmes. The next page purports to be "PAGE: 2 of 13." The remaining pages of Exhibit C are pages 3 through 13 (of 13). The warranties and disclaimers appear on page 7, as does the integration clause indicating that an order for purchase is subject only to the terms and conditions set forth in the Quotation. This is the only place within the sixteen pages that these terms are located. There is no evidence within the thirteen pages of the Quote that sheds light on how—or if—it was communicated to Holmes, such as a received date stamp, or fax header. No representative or employee of the Defendant has offered testimony to provide clarification to this missing detail, or to explain why the first page of the Quote suggests there was a 4-page quote. For the Plaintiff, Almendinger maintains that the parties agreed on the price and general terms before he sent the purchase order, but that they did not have any discussion about the terms contained in the Quote. Although a discussion of all the terms would not have been necessary to accept the terms and thus enter a contract based on those terms, Holmes's faxed order to purchase the Defendant's product "per Quote" is not, by itself, proof of acceptance of those terms. It simply has not been established what portion of Quote R12-00803 Almendinger had received and was therefore referencing in the purchase order. With the limited evidence before the Court, the use of the Quote number could have been in response to an oral quote, or in response to a 4-page Quote, the terms of which are unknown.

      This Court does not weigh the evidence and determine the truth of matters. With the sparse, and somewhat confusing, record before it, the Court cannot say that the contract between

the parties contained the terms listed in all thirteen pages of Quote R12-00803. Although it seems unlikely that Quote R12-00803 was not delivered to Holmes in its entirety before Holmes issued the purchase order, it is not an implausible assertion. *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761–62 (7th Cir. 2006) (stating that the court had to credit the non-moving party's version of the facts and "and resist the temptation to evaluate the relative veracity of each party's facts, provided the claims are not implausible on their face" (citing *Payne*, 337 F.3d at 770–71)). "This is true even when the one-sidedness of the allegations causes us to raise a brow." *Id.* (citing *Payne*, 337 at 771). The Court cannot "vouch for the truth of the facts," but only "use them to determine whether the case can be resolved as a matter of law." *Id.* (citing *Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044–45 (7th Cir. 2002)). In this case, there remain issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES in PART the Defendant's Motion for Summary Judgment [ECF No. 42]. Count II (Breach of Contract) and Count III (Breach of Implied Warranties) of the Complaint remain pending.

SO ORDERED on August 14, 2017.

                                            s/ Theresa L. Springmann
                                           CHIEF JUDGE THERESA L. SPRINGMANN
                                           UNITED STATES DISTRICT COURT