UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AFFINITY MUTUAL INSURANCE as Subrogee of HOLMES & COMPANY, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CAUSE NO.: 1:16-CV-155-TLS<br>) |
| NIDEC AVTRON AUTOMATION CORPORATION, | )<br>)<br>) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Affinity Mutual Insurance, as subrogee of Holmes & Company, Inc., filed a four-count subrogation action against Defendant Nidec Avtron Automation Corporation[1] [ECF No. 8]. The Plaintiff brought claims under theories of negligence, strict products liability, breach of contract, and breach of implied warranties. On March 1, 2017, the Defendant moved for summary judgment [ECF No. 42] on all four claims. The Court granted the motion in part [ECF No. 48], but withheld summary judgment on Count II (breach of contract) and Count III (breach of implied warranties).

The Defendant now comes before the Court with a more developed factual record and moves again for summary judgment [ECF No. 51]. The matter is now fully briefed and ripe for review. For the reasons that follow, the Court grants the Defendant's Second Motion for Summary Judgment.

---

[1] The Defendant has since merged with the originally named defendant, Nidec Motor Corporation.

## BACKGROUND

The background is taken from the parties' respective motions for summary judgment and attached exhibits. Holmes operates a large commercial sawmill located in Columbia City, Indiana. The Plaintiff is an Ohio-based insurer. At all relevant times, the Plaintiff provided property insurance to Holmes at the sawmill.

This sawmill has been damaged in multiple fires. In April 2012, the building suffered significant fire damage when a 200 HP AC drive enclosure manufactured by Jacobson Engineering failed. After this fire, Holmes needed a new drive system to run the sawmill. The Defendant had previously provided a power control system for the motor control center, known as an active front end (AFE), to control small power surges from the incoming electrical service. The Defendant could seemingly provide a new drive system to Holmes.

On April 3, 2012, a Regional Sales Manager for the Defendant sent Holmes a signed quote (Quotation R12-00803) for the sale of a 200 HP Standard Avtron Saw Carriage Electric Drive System (Drive System) via electronic fax. (*See* ECF No. 51-2, Ex. I.) The Plaintiff has provided a copy of the Quotation R12-00803 with a fax transmission date-stamped for April 3, 2012. (*Id.*)

On April 5, 2012, the same Sales Manager, William Trende, sent Holmes a final signed quote for the Drive System, again designated Quotation R12-00803, and again via electronic fax. Neither party has produced an April 5 date-stamped copy of Quotation R12-00803. The Defendant, however, has come forward with an affidavit from Trende stating that he sent Quotation R12-00803 via electronic fax on April 5, 2012, and has produced a copy of Quotation R12-00803 that Trende swore he sent to Holmes on April 5, 2012. (ECF No. 51-1, Ex. H ¶¶ 8–10; ECF No. 51-3, Ex. J.) The Plaintiff concedes that Holmes received both of these versions of

Quotation R12-00803 from the Defendant on April 3, 2012, and on April 5, 2012. (Pl. Resp. 5, ECF No. 54.) Both versions of Quotation R12-00803 included identical terms of sale, including one regarding warranties and disclaimers:

> Company warrants that its products will be free from defects in material or workmanship for a period of one (1) year following installation, or fifteen (15) months after shipment from Company, whichever is shorter. <u>NO OTHER WARRANTY, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE IS MADE FOR THESE PRODUCTS, AND ALL OTHER WARRANTIES ARE HEREBY EXPRESSLY EXCLUDED.</u> In the event of a defect, the Company's obligation shall be limited to the supply of replacement parts free of charge. . . . <u>COMPANY SHALL HAVE NO OTHER LIABILITY, DIRECT OR INDIRECT, OF ANY KIND, INCLUDING LIABILITY FOR SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES.</u>

(ECF No. 51-2, Ex. I at 9; ECF No. 51-3, Ex. J at 7.)

On April 6, 2012, Holmes sent a purchase order to the Defendant. (*See* ECF No. 43-3, Ex. C at 2.) The purchase order expressly references Quotation R12-00803 and states that the purchase order is made "per Quote." Daniel Almendinger, the owner of Holmes, signed the purchase order. By June 2012, the Defendant installed the Drive System at the sawmill. Problems arose about eighteen months later.

In January 2014, the filter within the Drive System failed. Part of the transformer associated with the filter system and internal to the Drive System was on fire, but Holmes' employees extinguished the fire without any significant damage to adjacent equipment. Holmes did not make an insurance claim for this damage, and instead coordinated with the Defendant to replace the filtering system at Holmes' expense. The Defendant was able to locate a replacement filter and participated in the installation and commission of the new filtering system. More problems followed, though.

3

Events of April 14, 2014, gave rise to the instant litigation. On that day, while the sawmill was operating, the power went out. Holmes employees checked the electrical supply room and again found the transformer and filtering system of the motor control center smoking. Both the Defendant and the Plaintiff investigated the underlying cause. Both concluded that the Drive System did not perform as expected, led to overheating within the filter in the motor control center, and led to its failure. The Drive System was necessary to keep the sawmill running, and without it the sawmill shut down. The Plaintiff seeks lost profits and incidental costs to replace the destroyed components of the Drive System under either a breach of contract or breach of implied warranties theory of recovery.

## STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmoving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. [A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Facts that are outcome determinative under the applicable law are material for summary judgment

purposes. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## ANALYSIS

The Court begins by discussing the Contract between the parties. The parties agree that Quotation R12-00802 comprises the Contract. (Pl. Resp. 5; Def. Reply 3; *see also* ECF No. 51-3, Ex. J.) The Contract contains detailed terms and conditions. (ECF No. 51-3, Ex. J at 7–8.) One of these states:

> WARRANTIES AND DISCLAIMERS: Company warrants that its products will be free from defects in material or workmanship for a period of one (1) year following installation, or fifteen (15) months after shipment from Company, whichever is shorter. <u>NO OTHER WARRANTY, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE IS MADE FOR THESE PRODUCTS, AND ALL OTHER WARRANTIES ARE HEREBY EXPRESSLY EXCLUDED.</u> In the event of a defect, the Company's obligation shall be limited to the supply of replacement parts free of charge. . . . <u>COMPANY SHALL HAVE NO OTHER LIABILITY, DIRECT OR INDIRECT, OF ANY KIND, INCLUDING LIABILITY FOR SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES.</u>

(*Id.* at 7.) Another provision provides that Ohio substantive law governs the construction and effect of the Contract. (*Id.* at 8.) There are also provisions detailing the Defendant's responsibilities. One such provision states:

> Avtron [the Defendant] provides Field Service Engineering personnel and equipment necessary to plan and implement the start-up of the quoted system in a mutually agreeable fashion. Unless otherwise quoted, Field Service assistance will

be provided on a per diem basis according to standard Avtron terms and conditions
in effect at the time the service is provided.

(*Id.* at 10.)

The Court, sitting in diversity, must apply the choice of law rules of Indiana to determine the substantive law which will govern this case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495–96 (1941). "Indiana choice of law doctrine favors contractual stipulations as to governing law." *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002). Further, "Indiana courts 'would not separately analyze and apply the law of different jurisdictions to issues within each claim.'" *Transflo Terminal Servs., Inc. v. Savage Servs. Corp.*, 2:10-CV-80, 2016 WL 362368, at *3 (N.D. Ind. Jan. 29, 2016) (quoting *Nat'l Union Fire Ins. Co. v. Standard Fusee Corp.*, 940 N.E.2d 810, 815 (Ind. 2010)). The Contract between the parties provides that Ohio law governs its construction, and the parties have briefed the issues accordingly.

Contracting parties are permitted to determine which warranties attach to a transaction under Ohio law. Ohio Rev. Code Ann. § 1302.29 (West 2018). "[B]oth the implied warranties of merchantability and of fitness may be excluded or modified, if the exclusion or modification meets the criteria set forth in R.C. 1302.29(B)." *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 638 (Ohio 1989). Ohio Revised Code § 1302.29(B) provides:

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states for example, that "There are no warranties which extend beyond the description on the face hereof."

Additionally, a seller may limit a buyer's remedies through contract under other portions of the Ohio Revised Code. *See* Ohio Rev. Code § 1302.93(A)(1)("[Seller may] limit[] buyer's

6

remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts."); *see also* Ohio Rev. Code § 1302.93(C) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. . . . [L]imitation of damages where the loss is commercial is not [prima facie unconscionable].").

The parties agree that they are bound by the terms of the Contract, and the Plaintiff does not argue that the Contract is unconscionable. In this case, the Contract disclaims the implied warranty of merchantability, and absolves the Defendant from liability for incidental or consequential damages. Ohio law permits both of these, and the Contract does so permissibly under Ohio law. Additionally, while the Plaintiff has offered evidence of an oral agreement between the parties concerning the terms and conditions that pre-dates the Contract, this evidence is barred by the parol evidence rule. *See* Ind. Code § 26-1-2-202 (2018); *see also* Ohio Rev. Code Ann. 1302.05.

Nevertheless, the Plaintiff argues that the Defendant is not entitled to summary judgment because the Contract covers the *product* (in this case, the Drive System itself) but not the *service* (starting up the Drive System).[2] Under the Plaintiff's theory, the service is covered by a different contract between the parties, and this other contract does not absolve the Defendant from liability for consequential or incidental damages.

The Court is not persuaded that a genuine issue of material fact remains, even accepting the Plaintiff's argument. The Contract between the parties provides a baseline for the start-up services of the Drive System, namely that absent another quote the listed terms and conditions apply to the installation services as well. The Plaintiff has provided no admissible evidence of another quote, or any alternative terms and conditions that cover the "service" portion of the

---

[2] The Plaintiff raised this argument for the first time in its Response to the Defendant's Second Motion for Summary Judgment. (Mem. in Support of Pl. Resp. 5, ECF No. 54.)

alternate contract. The Plaintiff bears the burden to establish an alternate contract and its material terms. The Plaintiff has not done so here.

The Plaintiff's remaining claims for breach of contract and breach of implied warranties are barred by the Contract. The Plaintiff has not carried its burden to show that another contract exists with different terms to cover the start-up services of the Drive System. Therefore, no genuine issue of material fact remains, and the Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For these reasons, the Court GRANTS the Defendant's Second Motion for Summary Judgment [ECF No. 51], and DIRECTS the Clerk of Court to enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on February 26, 2018.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT